**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1609**

_____

PIERRE YASSUE NASHUN RILEY,

       Petitioner,

   v.

TODD BLANCHE, Acting Attorney General,

       Respondent.

_____

On Remand from the Supreme Court of the United States.  (S. Ct. No. 23-1270)

_____

Argued:  December 10, 2025                   Decided:  July 2, 2026

_____

Before KING, HARRIS, and QUATTLEBAUM, Circuit Judges.

_____

Amended petition for review granted; order vacated and remanded by published opinion. Judge Harris wrote the majority opinion, in which Judge King joined.  Judge Quattlebaum wrote a dissenting opinion.

_____

**ARGUED:**  Elizabeth Frances Profaci, SQUIRE PATTON BOGGS (US) LLP, Washington, D.C., for Petitioner.  Corey Leigh Farrell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Dimitar P. Georgiev-Remmel, Margaret L. Booz, Washington, D.C., Keith Bradley, ScheLeese Goudy, SQUIRE PATTON BOGGS (US) LLP, Denver, Colorado, for Petitioner.  Brian Boynton, Principal Deputy Assistant Attorney General, Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent

_____

PAMELA HARRIS, Circuit Judge:

At the heart of this immigration case, returned to us on remand from the Supreme Court, is petitioner Pierre Riley's request for deferral of removal under the Convention Against Torture. An Immigration Judge granted Riley that relief. But the Board of Immigration Appeals disagreed, finding that the Immigration Judge erred in his factual findings and that Riley's fear of torture in Jamaica was too speculative to qualify him for deferral of removal.

Riley petitioned this court for review of the Board's decision, initiating what would become a long-running dispute about our jurisdiction over Riley's claim. We originally dismissed Riley's petition without considering its merits, finding we lacked jurisdiction because the petition was untimely under 8 U.S.C. § 1252(b)(1). On certiorari review, the Supreme Court agreed with us that Riley's petition was untimely. But it did not agree that § 1252(b)(1)'s filing deadline is jurisdictional, categorizing it instead as a claims-processing rule. And because the government has waived enforcement of that rule in Riley's case, the Supreme Court held, § 1252(b)(1) does not preclude this court from reviewing Riley's petition.

On remand, we are presented with two questions. First, the government asks us to dismiss Riley's petition again for lack of jurisdiction – not because of its untimeliness, but on a new ground not previously addressed in this litigation. We decline that request, agreeing with Riley that he may amend his petition for review to obviate any potential jurisdictional defect. Accordingly, we reach the second question: whether the Board of Immigration Appeals misapplied the governing standard of review in evaluating the

2

Immigration Judge's factual findings.  We conclude that the Board erred in this respect and therefore vacate and remand for further proceedings.

## I.

Petitioner Pierre Riley was born and raised in Kingston, Jamaica.  In 1995, when he was a teenager, he came to the United States on a six-month tourist visa to live with his father, a United States citizen.  Riley overstayed his visa, and twelve years later, he was convicted of drug and firearm offenses in federal court.  When Riley was released from prison in 2021, the Department of Homeland Security ("DHS") took him into custody.  And on January 26, 2021, DHS issued a Final Administrative Removal Order directing that Riley be removed to Jamaica.

Riley resisted his return to Jamaica under the Convention Against Torture, or "CAT," which prohibits the removal of a noncitizen to a country where it is likely he would be tortured.  *Riley v. Bondi*, 606 U.S. 259, 264–65 (2025).  According to Riley, a powerful Jamaican drug dealer with connections to the Jamaican government had been targeting his family in Kingston and had murdered two of his cousins, and Riley feared that he, too, would be killed if he were to return to Jamaica.  Based on this reasonable fear of persecution, Riley was placed in "withholding-only" proceedings, where he agreed that deferral of removal under the CAT was the only relief for which he was eligible, given his prior convictions.

Those proceedings evolved into the petition for review now before us.  We describe them in more detail below, when we take up the merits of Riley's petition.  In brief, the

Immigration Judge ("IJ") credited Riley's testimony and granted him deferral of removal, finding that Riley had made the requisite showing that it was more likely than not that if removed to Jamaica, he would be tortured – killed or harmed by the drug dealer he feared – with the acquiescence of the Jamaican police. The government appealed, and the Board of Immigration Appeals ("BIA" or "Board") vacated the IJ's decision, holding that the IJ had incorrectly assessed the factual record. In the BIA's view, Riley's belief that the local drug dealer had killed his cousins and meant him harm was too speculative to support relief, as was his concern that the police would acquiesce in the hypothesized torture.

On June 3, 2022, three days after the BIA issued its decision, Riley petitioned this court for review. But we dismissed Riley's petition as untimely because Riley had not filed it within 30 days of his original removal order, issued in January 2021, as we believed 8 U.S.C. § 1252(b)(1) required. *Riley v. Garland*, 2024 WL 1826979, at *1–2 (4th Cir. Apr. 26, 2024) (per curiam) ("*Riley I*"). The Supreme Court granted certiorari and vacated our decision, holding that § 1252(b)(1)'s filing deadline, a non-jurisdictional rule waived by the government, did not preclude Riley's case from proceeding on remand. *Riley*, 606 U.S. at 263.

That brings us to the current appeal. Riley still seeks review of the BIA's decision vacating the IJ's grant of CAT relief and ordering his removal to Jamaica. This time, however, the parties raise a new set of threshold procedural arguments regarding a potential jurisdictional defect in Riley's petition and Riley's effort to cure any defect by amendment. And on the merits, Riley asserts that the BIA overstepped its role by conducting its own review of the factual record, as opposed to applying the governing clear-error standard of

4

review. Below, we address each issue in turn, concluding that we have jurisdiction to review Riley's petition as amended and agreeing with Riley on the merits.

## II.

We begin with the procedural issues. To explain them properly, we will have to describe in greater detail the history of Riley's immigration proceedings, including our first decision in this case and the Supreme Court's subsequent ruling. We then turn to the parties' procedural arguments on remand.

In brief, the government argues that we lack jurisdiction over Riley's petition based on a new theory, raised in a concurrence to the Supreme Court's decision in *Riley*: Riley seeks review only of the BIA order denying CAT relief, not his original removal order, and under the statute implementing the CAT, we may review CAT orders only "as part of the review of a final order of removal." *Riley*, 606 U.S. at 278 (Thomas, J., concurring) (quoting Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, § 2242(d), 112 Stat. 2681-822, note following 8 U.S.C. § 1231). Riley disagrees. But just in case, he also has filed a motion to amend his petition so that it *does* seek review of his final order of removal. For the reasons given below, we grant Riley's motion to amend, curing any potential jurisdictional defect. And on that ground, we find that we may consider the merits of Riley's petition.

5

**A.**

**1.**

We start with a recap of Riley's immigration proceedings and his first petition for review in this court. DHS issued Riley's Final Administrative Removal Order ("FARO") on January 26, 2021, explaining that Riley was subject to expedited deportation because he had been convicted of an aggravated felony. *See* 8 U.S.C. § 1228(b). Riley could have petitioned our court for review of his removability at that time, *see id.* § 1228(b)(3), but he did not. Instead, he sought another form of relief via withholding-only proceedings in immigration court, where he conceded his removability and acknowledged that because of his aggravated felony convictions, the only relief for which he was eligible was deferral of removal under the CAT. *See Moncrieffe v. Holder*, 569 U.S. 184, 187 & n.1 (2013). That relief is "country-specific"; if granted, it prohibits removal to the country designated in the removal order (here, Jamaica), but it does not affect the validity of the underlying removal order itself. *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021).

Riley's withholding-only proceedings lasted for over a year. They ended on May 31, 2022 – approximately 16 months after Riley's FARO was issued – when the BIA filed its decision vacating the IJ's grant of relief and ordering Riley removed to Jamaica. Three days later, Riley filed his petition with this court, asking us to review the BIA's decision on his CAT claim.

In an unpublished per curiam decision, we dismissed Riley's petition for lack of jurisdiction. *Riley I*, 2024 WL 1826979, at *2. First, we deemed Riley's petition untimely. Petitions for review must be filed within 30 days "of the final order of removal." 8 U.S.C.

§ 1252(b)(1).  Riley, as noted above, had filed his petition just a handful of days after the BIA's CAT order.  But under our precedent, the "final order of removal" starting the § 1252(b)(1) clock was Riley's January 26, 2021 FARO, not the more recent CAT order – putting Riley well outside the 30-day deadline.  *Riley I*, 2024 WL 1826979, at *2 (citing *Martinez v. Garland*, 86 F.4th 561, 567 (4th Cir. 2023)).  And second, again following circuit precedent, we treated § 1252(b)(1)'s filing period as jurisdictional, which meant that we were required to dismiss Riley's untimely petition.  *Id.* at *1 (citing *Martinez*, 86 F.4th at 566).

**2.**

The Supreme Court took up Riley's case, vacated our decision, and remanded for further proceedings.  *Riley*, 606 U.S. at 263.  The Court agreed with us that Riley's petition was untimely.  *Id.* at 266–67.  The BIA's CAT order, the Court held, was not a "final order of removal" within the meaning of § 1252(b)(1), so the fact that Riley filed within 30 days of that order did not make his petition timely.  *Id.*  Instead, Riley was required to seek review within 30 days of his FARO – issued in January 2021, over a year before the conclusion of his withholding-only proceedings – and failed to do so.  *Id.*

That conclusion, the Supreme Court recognized, raised "legitimate practical concerns."  *Id.* at 272.  As Riley's case illustrated, withholding-only proceedings may not conclude until months after a FARO has issued, well outside § 1252(b)(1)'s 30-day filing period.  And noncitizens like Riley, "who wish only to contest" eligibility for withholding relief, would have no reason to seek review unless and until the BIA denied that relief – by which point, it would be too late to file under § 1252(b)(1).  *Id.* at 271–72.  A noncitizen

7

could thus be "deprived of any judicial review" of an order denying deferred removal under the CAT. *Id.* at 272.

But that outcome, the Supreme Court reasoned, could be avoided. In cases like Riley's – cases in which the only issue is the availability of withholding relief – noncitizens could be counseled to file petitions for review of their FAROs within 30 days of those orders, while their withholding-only proceedings were pending. *Id.* And then appellate courts could be persuaded to put those placeholder petitions into abeyance, to be taken up only if and when withholding relief was denied. *Id.* At that point, "the withholding issue [would be] ready for review" in the appellate court, preserving judicial review of decisions like the CAT order at issue in Riley's case. *Id.*; *see also id.* at 297 (Sotomayor, J., dissenting in part) (describing the "protective appeals" contemplated by the majority's approach).

With the timeliness issue resolved, the Supreme Court turned to the second question presented: whether § 1252(b)(1)'s 30-day filing deadline is jurisdictional. Here, the Supreme Court disagreed with our decision in *Riley I*, holding that § 1252(b)(1) is a mandatory claims-processing rule, not a jurisdictional requirement. *Id.* at 273–74. As the Court explained, that distinction was critical for Riley. Claims-processing rules, unlike jurisdictional requirements, can be waived. *Id.* at 273. And here, the government had not pressed and did not wish to press lack of timeliness as a ground for dismissal of Riley's petition. *Id.* at 277. Accordingly, that Riley's petition was not filed within 30 days of his FARO did not preclude review of his claim. *Id.*

8

But for subsequent developments, we could stop there in our description of *Riley*. In light of the government's argument on remand, however, we describe briefly the separate concurring opinion of Justice Thomas.  Justice Thomas agreed that § 1252(b)(1) presented no obstacle to Riley's petition but suggested our court "may nevertheless lack jurisdiction over this suit for a different reason." *Id.* at 278 (Thomas, J., concurring).  When Congress passed legislation to implement the CAT, it specified that the statute did not provide jurisdiction to consider CAT claims "except as part of the review of a final order of removal[.]"   FARRA, Pub. L. No. 105-277, § 2242(d), 112 Stat. 2681-822, note following 8 U.S.C. § 1231.  In Justice Thomas's view, that provision, along with others governing our review of immigration cases, leaves us without jurisdiction to consider a CAT claim unless it is paired with a challenge to a FARO.  *Riley*, 606 U.S. at 278–80 (Thomas, J., concurring).  And because Riley's petition seeks review only of the BIA's CAT order and not his original FARO, Justice Thomas concluded, we likely lack jurisdiction over his claim.  *Id.* at 280–81 (Thomas, J., concurring).

No other Justice joined Justice Thomas's concurrence, and the majority opinion did not address or refer to it.  The Supreme Court vacated our decision in *Riley I* and remanded the case to us for proceedings consistent with its opinion.  *Id.* at 277.

**B.**

On remand, the government has again moved to dismiss Riley's petition for lack of jurisdiction, this time relying on the ground set out by Justice Thomas in his *Riley* concurrence.  Riley disputes this reading of the relevant statutes and maintains that we have jurisdiction to review the BIA's CAT order regardless of whether he simultaneously seeks

9

review of his FARO.  But in the alternative, and to avoid any uncertainty, Riley also has moved to amend his petition for review so that it does seek review of the January 26, 2021 FARO as well as the BIA's CAT order.

We consider our jurisdiction over Riley's petition *de novo*.  *Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010).  The government's motion to dismiss, tracking Justice Thomas's *Riley* concurrence, raises a substantial argument, and three federal courts of appeals have agreed that they lack jurisdiction to hear CAT claims independent of challenges to final orders of removal.  *Navarrete v. Bondi*, 170 F.4th 1214, 1221 (9th Cir. 2026); *Hayles v. U.S. Att'y Gen.*, __ F.4th __, 2026 WL 1782580, at *4 (11th Cir. 2026); *Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 190 n.13 (2d Cir. 2022), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025).  But Riley is not without counterarguments:  According to Riley, it is not CAT's implementing statute that confers jurisdiction over CAT orders but 8 U.S.C. § 1252(a)(4), which allows for review of a "claim under the [CAT]" by a "petition for review," period, with no further requirement that the petition seek review of a *removal* order.  And the Third Circuit recently adopted that position, leaving us with a split of authority in the federal circuit courts.  *See Laureano v. Att'y Gen. U.S.*, 177 F.4th 453, 459–60 (2026) (finding jurisdiction to review a CAT claim under § 1252(a)(4) where the petitioner did not also challenge her final order of removal).

We need not resolve this complicated question today, because we agree with Riley that he should be permitted to amend his petition for review so that it includes within its scope his FARO as well as the BIA's CAT order.  With one exception – which we address

below – that is precisely the process the Supreme Court laid out in *Riley* to ensure judicial review of CAT claims:  Immigrants like Riley, who seek only country-specific withholding relief, should nevertheless file protective appeals challenging their removal orders; those appeals should be held in abeyance until withholding-only proceedings conclude; and then, if relief is denied, that denial will be "ready for review" in the court of appeals.  *Riley*, 606 U.S. at 271–72.  In substance, that is all Riley asks to do:  He wants to petition for review of his removal order – here, by way of amendment; skip the abeyance, given that his withholding-only proceedings have concluded; and have us rule on the merits of his CAT claim, now "ready for review."

Riley's case, to be sure, presents one twist.  What the Supreme Court invited in *Riley* was a *timely* placeholder appeal – a petition for review of a FARO filed "within 30 days after the issuance of [that order]."  *Id.* at 272.  And Riley, of course, did not file a petition within 30 days of his January 26, 2021 FARO; he filed nothing at all until June 3, 2022, when he sought review of the BIA's CAT order.  In another case, a lapse like that might render unavailable the route to judicial review endorsed by the Supreme Court in *Riley*.  But for Riley himself, it poses no problem – because, recall, the government has waived any timeliness objection to review of Riley's petition.  *Id.* at 277.  And the Supreme Court has blessed review of CAT claims in precisely that scenario, clarifying in *Riley* that immigrants who "are mistaken about when a petition for review must be filed" will still be able to obtain review of their CAT claims if the government does "what it has done in Riley's case, *i.e.*, declining to press for enforcement of the 30-day filing rule."  *Id.* at 272.

11

The government nevertheless opposes Riley's motion to amend his petition to take advantage of the process outlined in *Riley*. The problem, in the government's view, is that Riley does not genuinely wish to challenge his order of removal, having conceded removability long ago, and raises no actual arguments against the validity of his removal order. An amended petition that seeks only nominal review of Riley's FARO and presents no substantial challenge to that order, the government argues, cannot be used as a backdoor to review of Riley's CAT claim.

But as we read *Riley*, such nominal challenges to removal orders are exactly what is contemplated. The Court, again, was addressing a concern that arises with respect to noncitizens "like Riley who wish only to contest removal to their native country" – that is, to contest only their eligibility for withholding relief, and not the validity of their underlying removal orders. *Id.* at 271; *see also id.* at 264–65 (explaining withholding-only proceedings). The point of the procedure outlined in *Riley* is to allow such noncitizens, who may *not* have a basis for challenging removability, to nevertheless obtain judicial review of their CAT claims. *Id.* at 271–72. All *Riley* requires is that they "file a petition within 30 days after the issuance of a FARO" – a timing requirement waived in this case. *Id.* at 272. There is no further requirement that they invent a challenge to a removal order that they would otherwise forgo.

That is not surprising. Just months before it decided *Riley*, the Supreme Court rejected a very similar government position – one that would have required noncitizens to "make up" challenges to removability "in order to get jurisdiction." *Monsalvo Velázquez v. Bondi*, 604 U.S. 712, 722 (2025). At issue in that case was whether 8 U.S.C.

12

§ 1252(a)(1), which provides for judicial review of final orders of removal, allows courts to hear legal questions about removal orders if a noncitizen does not challenge removability itself. *Id.* at 720–22. The government thought not. Even a noncitizen who did not believe he had a viable case against removability, the government argued, would have to "bundle" his legal claims with "some challenge to the Board's conclusion that he was removable" in order to obtain judicial review. *Id.* at 721–22. But the Supreme Court rejected a reading of § 1252 that would have required noncitizens to "either adorn their judicial petitions with a pointless challenge to their removability or forfeit the right to review altogether." *Id.* at 722. On our read – and on that of the Third Circuit – *Riley* takes the same sensible approach. *Cf. Laureano*, 177 F.4th at 458 (explaining that the procedure endorsed in *Riley* "demonstrates that the Supreme Court had no doubt that courts of appeals have jurisdiction to review withholding-only rulings independent of any *substantive* review of final orders of removal" (emphasis added)).

We recognize that the Ninth Circuit, in a similar case, recently denied a noncitizen's request to amend his petition for review. In *Navarrete v. Bondi*, the Ninth Circuit first adopted Justice Thomas's view that a federal court of appeals lacks jurisdiction to "hear CAT claims independent of challenges to final orders of removal," 170 F.4th at 1221, and then denied the petitioner leave to amend his petition to add to his CAT claim a "nominal" challenge to his removal order, *id.* at 1224. Only an actual and "colorable" claim against

13

removability, the Ninth Circuit held, would be sufficient to invoke its jurisdiction. *Id.*[1]

With respect, we are not persuaded that this is the right approach here.

First, we note that *Navarrete* arose in a different procedural posture. Unlike Riley, the petitioner in *Navarrete* was never placed in withholding-only proceedings. *Id.* at 1218. And the protective-appeal process the Supreme Court laid out in *Riley* is expressly designed to secure judicial review of those proceedings. 606 U.S. at 272. Perhaps for that reason, the court in *Navarrete* never addressed the portion of *Riley* on which we rely today.

We also hesitate to adopt the Ninth Circuit's reasoning, which relied on cases setting out the established principle that a party cannot stake federal jurisdiction on a claim that is "so unsubstantial as to be frivolous" or "plainly without color of merit." *Navarrete*, 170 F.4th at 1224 (quoting *Binderup v. Pathe Exch. Inc.*, 263 U.S. 291, 305–06 (1923)). Here, it is not disputed that Riley *does* have a substantial and non-frivolous federal claim, as to the denial of CAT relief. The only question is whether Congress has limited our jurisdiction to review that substantial claim by requiring Riley to pair it with a challenge to his FARO – and if so, what *sort* of challenge will suffice. On that final point, we think *Riley* provides the authoritative guidance. And under *Riley*, noncitizens in Riley's position – noncitizens who wish to challenge the result of withholding-only proceedings but not removability itself – can preserve judicial review by filing a nominal appeal of their final

---

[1] Even more recently, the Eleventh Circuit followed the Ninth Circuit's approach, with respect to both the underlying jurisdictional issue and a motion to amend a petition for review. *See Hayles*, __ F.4th __, 2026 WL 1782580, at *4–5.

orders of removal, without also briefing meritless arguments against those orders.[2]  606 U.S. at 271–72.

For the reasons given above, we grant Riley's motion to amend his petition to include within its scope his original FARO.  *See* 28 U.S.C. § 1653 (allowing for amendment of jurisdictional allegations in appellate as well as trial courts).  Because that amendment cures any potential jurisdictional defect, we deny the government's motion to dismiss as moot.  We thus proceed, after all these years, to the merits of Riley's CAT claim.

## III.

Riley seeks review of the determination by the BIA that the IJ erred in granting him CAT relief.  According to Riley, the BIA misapplied the clear-error standard that governs its review of an IJ's factual findings, impermissibly engaging in its own *de novo* weighing of the evidence.  We agree with Riley and therefore grant his petition for review, vacate the decision of the BIA, and remand the case for the BIA to apply the correct standard of review.  *See Funez-Ortiz v. McHenry*, 127 F.4th 498, 508 (4th Cir. 2025).[3]

---

[2] The dissent in *Riley* faulted the majority for a holding that required resort to a system of protective appeals – "procedural hoops" that "serve no function" – in order to preserve judicial review.  606 U.S. at 297 (Sotomayor, J., dissenting in part).  We appreciate the administrative difficulties of such systems, *see id.* at 298 (Sotomayor, J., dissenting in part), and for practical reasons, too, we are reluctant to adopt a "colorable claim" requirement that would make the process laid out in *Riley* both more confusing for petitioners and more cumbersome for the government and the courts of appeals, which would be left to sort through meritless removability arguments raised solely to preserve review of CAT claims.

[3] Because we vacate and remand for this reason, we do not address the additional grounds on which Riley challenges the BIA's resolution of his CAT claim.  Success on any (Continued)

## A.

### 1.

Petitioner Riley, recall, came to the United States as a teenager to live with his citizen father, overstayed his visa, and ultimately served a prison sentence for federal drug and firearm offenses.  When he was released in 2021, he entered withholding-only proceedings, based on his fear that removal to Jamaica would put him at risk of murder by the "Don" who controlled his Kingston neighborhood, Andrew Hamilton.

According to what the IJ described as Riley's "very detailed application" for CAT relief and supporting affidavit, J.A. 130, Hamilton is a drug kingpin and gang lord who rules over Riley's Kingston neighborhood with an "iron fist" and the backing of Jamaican politicians and law enforcement, J.A. 275.  In 2008, Hamilton ordered the murder of one of Riley's cousins, then living in the United States, because the cousin refused to make payments to Hamilton in support of his rule.  When the cousin was deported to Jamaica, Hamilton had him killed.  A few years later, a different cousin was also deported to Jamaica, where he asked local police to address the murder of his relative.  The police reported that exchange to Hamilton, who then had the second cousin killed as well.  When Hamilton learned of Riley's release from prison in 2021, he began to threaten Riley with death, in part to prevent Riley from retaliating against him for the murder of his cousins.

---

one of those claims would result in the same remand for reconsideration we enter today. On remand, the BIA will have a chance to consider all of Riley's arguments and make any adjustments it deems appropriate.

16

Riley's testimony on this point was corroborated by affidavits submitted by his mother and sister, both of whom live in Jamaica and reported receiving multiple messages and phone calls from unknown individuals when Riley was released from prison, stating that they had "orders to kill" Riley "if he ever sets foot in Jamaica." J.A. 280, 284. His sister also recounted two unknown people approaching her in person and threatening Riley. And Riley's mother said that one of her neighbors told her masked men appeared in the neighborhood asking about Riley's whereabouts.

Riley's sister and mother also attested that their efforts to enlist the help of the police were unavailing. Police officers told Riley's mother that they could not help Riley because he was not yet in Jamaica, and also that "deportees are not their concerns because [they] are criminals" and "the police do not have time to protect criminals." J.A. 281. Riley's sister was separately informed by a "police friend" that if Riley returns to Jamaica, "he is a dead man" because the government will not protect deportees. J.A. 285.

**2.**

To obtain deferral of removal under the CAT, a petitioner must show that, if removed, it is "more likely than not that (1) he or she would be tortured (2) with the consent or acquiescence of the government." *Funez-Ortiz*, 127 F.4th at 503 (citing 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1)). Harm – physical or mental – rises to the level of "torture" only if it constitutes "severe pain or suffering," "intentionally inflicted." *Id.* at 503 n.9 (quoting 8 C.F.R. § 1208.18(a)(1)); *see also Cabrera Vasquez v. Barr*, 919 F.3d 218, 224 n.3 (4th Cir. 2019) ("Death threats . . . may constitute torture under the CAT." (citing 8 C.F.R. § 1208.18(a)(4)(iii)–(iv))). The requisite "acquiescence" can be

17

established if a public official is aware of such conduct and breaches a legal responsibility to intervene to prevent it. *Funez-Ortiz*, 127 F.4th at 507.

The IJ determined that Riley satisfied this demanding standard and granted deferral of removal under the CAT. Before reaching this determination, the IJ reviewed Riley's "detailed affidavit," along with the supporting affidavits from his family members and voluminous country conditions reports submitted by Riley. J.A. 130. The IJ also held an evidentiary hearing at which Riley testified and was cross-examined by the government, during which the IJ, on his own account, "listened carefully to [Riley's] testimony" and "observed [Riley] very carefully as he was answering questions." *Id*. After this "thorough review," the IJ found Riley's testimony credible, based both on its consistency and on its corroboration by independent evidence. *Id.* (explaining that Riley "testified in a manner that was overall consistent with his prior statements" and that "the evidence also independently corroborates" key elements of his account).

As to the threat of torture, the IJ found that Riley testified credibly regarding Hamilton's activities – Hamilton's drug trafficking, his ties to political authorities, his control over Riley's Kingston neighborhood – and his role in the killings of Riley's cousins. Much of that testimony, the IJ found, was corroborated by independent evidence. Hamilton's identity, involvement with drugs, and drug-related convictions in the United States all were confirmed. Riley's understanding of the power Hamilton wielded in his neighborhood was also consistent with country conditions reports about the influence of Dons in Jamaican society. Independent evidence confirmed the killings of Riley's cousins, and while the death reports did not identify a culprit, Riley's testimony about Hamilton's

18

involvement "filled in that gap." *Id.* Finally, threats on Riley's life were corroborated by the affidavits of his relatives.

The IJ again relied on Riley's credible testimony, as corroborated by other evidence, to find it was more likely than not that Jamaican law enforcement would acquiesce in the harm Riley faced. As Riley explained, the police, informed of the threats against him, "refused to do anything." J.A. 133. Riley's mother reported threats on Riley's life to the police, but, per her affidavit, the police would not take a report, in part because deportees like Riley "are criminals, and the police do not have time to protect criminals." J.A. 281. And this account, the IJ found, was consistent with the "background information" and country conditions reports submitted by Riley, confirming the prevalence in Jamaica of gang leaders with enough influence over the police to ensure that their crimes are not investigated. J.A. 134.

As the IJ summed it up, Riley has been threatened by Hamilton, "who has killed two male members of his family with the police not investigating the death[s] of the cousins," and who has significant "influence . . . in the neighborhood and on police." *Id.* That was enough, the IJ concluded, to show the requisite "particularized risk of torture" with the acquiescence of the Jamaican government. *Id.*

### 3.

The government appealed, and the BIA reversed the IJ's grant of CAT relief. The BIA did not disagree with any of the IJ's legal determinations – that the harm feared by Riley rose to the level of "torture," for instance, or that the refusal of Jamaican police to protect Riley from the threatened harm would amount to "acquiescence" under the CAT.

Nor did the BIA take issue with the IJ's credibility finding regarding Riley's testimony. Instead, the BIA purported to find "clear error" in the IJ's factual findings regarding "what is likely to happen to the applicant upon his removal to Jamaica." J.A. 4.

In the Board's view, the IJ's finding of a particularized risk of torture was based on "a speculative chain of events," and, in particular, "speculative assertions by [Riley] regarding Hamilton." *Id.* "[O]ther than [Riley's] testimony," there was no evidence tying Hamilton to the killings of Riley's cousins or to the threats against Riley. *Id.* And Riley's testimony, the BIA observed, was "not based on first-hand knowledge." *Id.* Indeed, the BIA pointed out, it could be deduced from the date of Hamilton's indictment in the United States that Hamilton would have been incarcerated in this country at the time of the second cousin's murder in 2011. And while the IJ had found support for Riley's claims in country conditions reports, the BIA concluded, those reports did not mention Hamilton or indicate that he killed Riley's cousins.

The BIA also disagreed with the IJ's findings on acquiescence. The BIA faulted the IJ for relying on Riley's mother's affidavit: In the BIA's view, the affidavit showed only that the police would not investigate threats against people not currently in Jamaica, which was not enough to demonstrate acquiescence. And the BIA again disputed the IJ's reliance on country conditions reports, finding that those reports did not give reason to think the police would acquiesce in torture.

In short, the BIA "conclude[d] that [Riley's] claim . . . [was] not supported by sufficient objective evidence to corroborate his speculative fear of torture by Hamilton or

20

that the government [would] acquiesce in his torture." J.A. 5. On that ground, it vacated the IJ's grant of CAT relief and ordered Riley removed to Jamaica.

**B.**

When the BIA reviews an IJ's factual findings in a CAT case, the Board's role is limited to assessing whether such findings are "clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). That is a deferential standard, reflecting the "sensible understanding" that IJs, who hear witnesses and sort evidence first-hand, are better positioned than the BIA to make the factual determinations critical to a CAT claim: "what will happen to the petitioner if he is removed," and "whether [he] will be subject to future mistreatment with the support or acquiescence of the government." *Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012) (first quotation); *Funez-Ortiz*, 127 F.4th at 504–05 (second and third quotations) (internal quotation marks omitted). On those questions, the BIA may not "reweigh evidence or substitute its own judgment for that of the IJ." *Funez-Ortiz*, 127 F.4th at 505 (cleaned up); *see* 8 C.F.R. § 1003.1(d)(3)(i) ("The Board will not engage in *de novo* review of findings of fact determined by an immigration judge.").

On appeal, Riley contends that the BIA misapplied the governing clear-error standard when it reviewed the IJ's grant of CAT relief in his case. We review *de novo* whether the BIA applied the correct standard of review. *Duncan v. Barr*, 919 F.3d 209, 213 (4th Cir. 2019). And as we have recognized, it is not dispositive that the BIA recited the correct standard, as it did here; we must still consider whether the Board properly applied that standard. *See Funez-Ortiz*, 127 F.4th at 507–08; *F.J.A.P. v. Garland*, 94 F.4th 620, 638 (7th Cir. 2024) (explaining that "[a]cknowledging the proper standard of review"

21

does not "immunize the Board's decision" and that the reviewing court must "look to the [BIA's] analysis" to determine whether it is indicative of *de novo* review), *abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025).  Here, we see multiple indications that, notwithstanding the BIA's invocation of the clear-error standard, its assessment of the facts more closely resembled *de novo* review.

We start with what appears to have been the BIA's primary concern:  the "speculative" nature of Riley's testimony that Hamilton was responsible for the killings of his cousins.  J.A. 4.  It is true, as the BIA noted, that Riley's testimony on this point was "not based on first-hand knowledge."  *Id.*  But the IJ recognized precisely this "gap" in Riley's account, as his opinion makes clear.  J.A. 130.  And he utilized his institutional factfinding capacity to address the gap, pressing Riley at the hearing as to how he knew it was Hamilton who ordered the killings.  The answer was not simply, as the BIA summarized, that Hamilton "brag[ged] about this stuff."  J.A. 5.  Riley went on to explain that taking credit for killings like those of his cousins is how Dons like Hamilton maintain control over their neighborhoods; their terror tactics are successful precisely because they are "not hidden."  J.A. 204.  Dons "run[] th[e] community" by making clear that they are responsible for killing those who go "against the grain," ensuring that "[p]eople live in fear" that they could be next.  *Id.*

The IJ found this explanation credible and persuasive.  The BIA obviously disagreed.  But it nowhere explained why the IJ's position, entitled to deference under the governing regulation, was illogical or implausible – the hallmarks of a clearly erroneous finding.  *See Soto-Soto v. Garland*, 1 F.4th 655, 660 (9th Cir. 2021) (holding, in part for

22

this reason, that the BIA improperly applied *de novo* review to an IJ's factual findings); *Funez-Ortiz*, 127 F.4th at 507 ("When an agency adjudicator disregards credible, significant, and unrebutted evidence, that adjudicator must offer specific, cogent reasons for doing so." (internal quotation marks omitted)).  That failure suggests "the use of a standard of review less deferential than clear error." *F.J.A.P.*, 94 F.4th at 638, 640.

So, too, does the BIA's apparent reweighing of the evidence.  In rejecting Riley's account as too "speculative," the Board focused on the timing of Hamilton's United States indictment – which would, as the BIA reasoned, put Hamilton in a United States prison at the time one of Riley's cousins was killed.  J.A. 4–5.  But that has no meaningful bearing on Riley's account, which, as the BIA itself acknowledged, has Hamilton *ordering* the killings of his cousins, not committing them himself.  And more important for our purposes, the Board's independent foray into the timing of Hamilton's indictment – at the expense of the testimony found credible and significant by the IJ – is indicative of a *de novo* weighing of the evidence, not clear-error review.  *See Funez-Ortiz*, 127 F.4th at 507–08; *F.J.A.P.*, 94 F.4th at 639–40.

Finally, there are the country conditions reports.  The IJ credited Riley's account – including his explanation for how he knew that Hamilton was behind his cousins' killings – in part because it was consistent with country conditions reports.  Again, the BIA disagreed, noting that "[t]he country conditions evidence does not mention Hamilton" and does not corroborate the claim that Hamilton killed Riley's relatives or poses a particularized risk of harm to Riley.  J.A. 5.  But the BIA never addressed the purpose for which the *IJ* used the country conditions reports:  not to implicate Hamilton, specifically,

but as "background information" confirming the unchecked power wielded by Dons in Jamaica. J.A. 134. The reports, in other words, may not mention Hamilton by name, but they depict a reality perfectly consistent with the one Riley described, lending plausibility to his account. *See F.J.A.P.*, 94 F.4th at 639 (discussing the use of country conditions reports to "provide[] a backdrop to significant testimonial evidence" and support an IJ's "inferences" about what might happen to a CAT claimant upon removal to that country). The Board, however, never engaged with the use to which the IJ put the country conditions reports and never considered the portions of the reports on which the IJ relied. This, too, suggests that the Board was according the IJ's factual findings something less than the deference required by clear-error review. *See Funez-Ortiz*, 127 F.4th at 507–08 (criticizing the BIA's "complete[] fail[ure] to address" evidence relied on by the IJ); *Soto-Soto*, 1 F.4th at 659 (the BIA's failure to address key findings on which an IJ based its conclusions "strongly suggests that the BIA did not faithfully engage in clear error review").

The BIA's review of the IJ's acquiescence finding suffers from the same flaws. Here, the BIA focused primarily on the affidavit of Riley's mother – and on one part of that affidavit in particular. In the BIA's view, that affidavit could not demonstrate a likelihood of law-enforcement acquiescence "simply because" the police told Riley's mother that they would not investigate threats against Riley while he was living outside Jamaica. J.A. 5. But the IJ did not find otherwise. Instead, the IJ relied on the *entirety* of the affidavit, which goes on to say that when Riley's mother pressed the point, a second officer "went on a rant," referring to death threats against Riley as "payback" and refusing to offer any protection to Riley if he *did* return to Jamaica because "it's not the job of [the]

24

Jamaican government to protect deportees." J.A. 281. Here again, the BIA discounted evidence that supported the IJ's finding in favor of a snippet of an affidavit less favorable to that finding. In so doing, it impermissibly "reweighed the evidence and made its own finding," indicating, again, that it applied the wrong standard of review. *Funez-Ortiz*, 127 F.4th at 508; *see F.J.A.P.*, 94 F.4th at 639–40.

The BIA concluded its opinion by holding that Riley's testimony and supporting evidence were insufficient to establish the requisite risk of torture with the acquiescence of Jamaican law enforcement. But that was not the question before the Board. The only question before the Board was whether the IJ's *contrary* determination, assessed with the appropriate deference, was clearly erroneous because the record compelled a different result. 8 C.F.R. § 1003.1(d)(3)(i); *Funez-Ortiz*, 127 F.4th at 508. The BIA did not explain why the IJ's findings could not be reconciled with the factual record or were otherwise so illogical that they could not be credited. Instead, it appeared to reweigh the evidence and make its own factual findings, contrary to the governing standard of review.

We have confronted similar circumstances before. *See, e.g.*, *Funez-Ortiz*, 127 F.4th at 507–08; *Turkson*, 667 F.3d at 528–29. As in those cases, we vacate the BIA's decision and remand for reconsideration of the IJ's decision under the correct standard of review. *See Funez-Ortiz*, 127 F.4th at 508–09; *Turkson*, 667 F.3d at 531.

25

**IV.**

For the foregoing reasons, we grant both Riley's motion to amend and his amended petition for review; vacate the decision of the BIA; and remand Riley's deferral of removal claim to the BIA for further proceedings consistent with this opinion.

*AMENDED PETITION FOR REVIEW GRANTED;*
*ORDER VACATED AND REMANDED*

QUATTLEBAUM, Circuit Judge, dissenting:

I disagree with the majority on both jurisdiction and the merits. CAT orders are not final orders of removal. And only final orders of removal are subject to review. CAT orders cannot be reviewed independently; they can only be reviewed when raised alongside a petition challenging a final order of removal. Riley's petition to review his CAT order is not part of a petition to review his removal order. So, we should dismiss this case for lack of jurisdiction.

The majority avoids this result by granting Riley's motion to amend his petition to add a nominal challenge to his final order of removal. But Riley's motion to amend does not actually challenge his order of removal. Not even a little. To the majority, that doesn't matter. It reads the Supreme Court's opinion remanding this case to allow us to pretend Riley is challenging his order of removal when we can all see that he isn't. I disagree. I see nothing in the Supreme Court's decision permitting such acrobatics. And with respect, we should not sanction meritless petitions for review.

As to the merits of Riley's petition, the Board of Immigration Appeals did not re-weigh the evidence to second guess the Immigration Judge's factual findings. Instead, it properly found that the evidence produced by Riley was legally insufficient. That fits comfortably within its role in the agency.

Respectfully, I dissent.

## I.

Pierre Riley, a native and citizen of Jamaica, last entered the United States in 1995 on a tourist visa when he was almost 16 years old. Since then, he has lived in the United

States. Eventually, he encountered criminal problems. In 2007, a federal court in New York convicted Riley of conspiring to distribute over 1,000 kilograms of marijuana and possessing a firearm in furtherance of the conspiracy. The district court sentenced him to 25 years in prison. In January 2020, that same federal court granted his pro se motion for compassionate release. He was released to ICE for the initiation of removal proceedings.

On January 26, 2021, the Department of Homeland Security issued a Final Administrative Removal Order for Riley. The order found that Riley was not a United States citizen and was a deportable aggravated felon. The order directed that Riley be removed from the United States to Jamaica and also found that Riley was ineligible for any relief from removal that could be granted within the Department's discretion. But Riley requested withholding or deferral of removal to Jamaica based on a fear of torture or persecution in Jamaica. So, he was referred to the asylum office for a reasonable fear interview. The asylum officer found Riley credible but ultimately determined that he had not established a reasonable fear of persecution or torture. Unsatisfied, Riley asked an immigration judge to review the reasonable fear determination. He applied for withholding of removal under both the Immigration and Naturalization Act and CAT and for deferral of removal under CAT. On July 27, 2021, an immigration judge held a withholding-only hearing on his claim since his removability was uncontested and the conviction undisputed.

At the hearing, Riley testified that Andrew Hamilton, a gang leader and drug kingpin in his former neighborhood in Jamaica, would torture him upon his return to Jamaica because Hamilton saw him as a potential threat. He testified that Hamilton killed two of his cousins and sent death threats to his mother and sister. Riley also submitted affidavits

28

from relatives and information about country conditions in Jamaica. The Immigration Judge credited Riley's testimony that he believed the police would not stop Hamilton and took note of his evidence of conditions in Jamaica. As a result, the judge found that Riley had met his burden of showing that if returned to Jamaica, Hamilton would torture him with the acquiescence of the governing authorities. So, the Immigration Judge granted Riley deferral of removal under CAT. At the hearing, the judge ordered that Riley be removed to Jamaica; denied his application for statutory withholding of removal and withholding of removal under CAT due to his having committed a "particularly serious crime"[1] and granted his application for deferral of removal under CAT. J.A. 131. The written order largely followed the same pattern, but it did not make any statement on removal.

The Department appealed the Immigration Judge's decision to the Board of Immigration Appeals. The Board did not dispute the judge's finding that Riley was credible, but it held the factual finding that Hamilton would torture Riley if returned to Jamaica was clearly erroneous. And it likewise held there was no evidentiary support for the judge's conclusions that, if removed, Riley had shown a particularized risk of torture and the Jamaican government would acquiesce to that torture. Thus, the Board held that Riley had not met his burden of showing eligibility for deferral of removal under CAT. So,

---

[1] The commission of such a crime bars withholding of removal under 8 U.S.C. § 1231 and withholding of removal under CAT. 8 C.F.R. § 1208.16(d)(2)–(3). Riley does not dispute that his conviction falls within the definition of a "particularly serious crime."

the Board reversed the Immigration Judge's determination granting deferral of removal under CAT and ordered Riley removed from the United States to Jamaica.

Riley petitioned us for review of the Board's decision. Relying on *Martinez v. Garland*, 86 F.4th 561 (4th Cir. 2023), we dismissed the petition for lack of jurisdiction, concluding that an order denying CAT relief is not a final order of removal and that Riley failed to timely petition for review of a final order of removal as required by 8 U.S.C. § 1252(b)(1). *Riley v. Garland*, No. 22-1609, 2024 WL 1826979, at *2 (4th Cir. Apr. 26, 2024), *vacated and remanded sub nom*, *Riley v. Bondi*, 606 U.S. 259 (2025). Also relying on *Martinez*, we found § 1252(b)(1)'s 30-day requirement to be jurisdictional, meaning Riley's failure to petition for review within the timeframe deprived us of the power to consider his petition. *Id.* After accepting certiorari, the Supreme Court confirmed that orders denying deferral of removal in "withholding-only" proceedings are not final orders of removal. *Riley*, 606 U.S. at 263. But it also held that the 30-day filing deadline is a claims processing rule, not a jurisdictional requirement. *Id.* at 277. And because the government did not wish to press timeliness as a ground for dismissal in front of the Immigration Judge, the Court remanded the case to us for further proceedings. *Id.* at 276.

## II.

### A.

Before addressing the issues remaining before us on remand, it's helpful to review our statutory framework and recent Supreme Court decisions interpreting it. The primary statute we must consider is 8 U.S.C. § 1252.

Subsection (a)(1) of § 1252 permits judicial review of final orders of removal. Subsection (b)(1) says petitions to review orders of removal must be filed within 30 days of the final order of removal. Subsection (b)(2) says that petitions for review must be filed with the appropriate court of appeals. And subsection (b)(9) makes clear that all questions of law and fact arising from an order of removal must be consolidated into one petition for judicial review.

Other provisions of § 1252 are also relevant. Subsection (a)(4) addresses CAT orders. It provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of any cause or claim under [CAT]." 8 U.S.C. § 1252(a)(4).[2] But it does not say that CAT orders may be reviewed independently from a final order of removal. Nor does it operate as its own grant of jurisdiction. The jurisdictional basis for reviewing CAT orders comes from the Foreign Affairs Reform and Restructuring Act of 1998. *See* Pub. L. No. 105–277, § 2242(d), 112 Stat. 2681, 2681–822 (codified at 8 U.S.C. § 1231 note). The codified note to 8 U.S.C. § 1231 explains that "nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section . . . *except as part of the review of a final order of removal* pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252)." *Id*. (emphasis added).

---

[2] The Real ID Act of 2005 codified this provision in 8 U.S.C. § 1252(a)(4).

B.

The Supreme Court has provided guidance on this statutory framework and how these various provisions interact. In *Nasrallah v. Barr*, 590 U.S. 573 (2020), the Court addressed "the scope of judicial review of CAT orders for those noncitizens who have committed crimes specified in § 1252(a)(2)(C)." *Id.* at 576. The Court held that "in the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Id.* at 579 (quoting 8 U.S.C. § 1101(a)(47)(A)). It also held that a CAT order isn't a final order of removal because such an order only affects the designated country of removal, not whether the alien is removable. *Id.* at 582. And because a CAT order "does not affect the validity of the final order of removal," the Court explained that it "does not merge into the final order of removal" either. *Id.* Even so, the Court concluded that courts of appeal can review factual challenges to a CAT order under a deferential standard. *Id.* at 576. In reaching its conclusion, it noted that § 1252(a)(4) contemplates such direct review of CAT orders and that "judicial review of CAT claims [be] together with the review of final orders of removal." *Id.* at 585. And the Court found that neither § 1252(b)(9) nor the note to § 1231 foreclose review. *Id.* at 583. Those provisions only state that such review must be in conjunction with the review of a final order of removal. *Id.*[3]

---

[3] Justice Thomas dissented, concluding that CAT orders fell within § 1252(b)(9), which means that "courts have no jurisdiction to review factual challenges to CAT claims brought in the course of a criminal alien's removal proceeding." *Id.* at 591 (Thomas, J., dissenting).

The Supreme Court provided additional guidance in this case before remanding it to us. As already explained, the Court held that § 1252(b)(1)'s 30-day time limit is a claims processing provision, not a jurisdictional requirement. *Riley*, 606 U.S. at 277. The Court also reiterated *Nasrallah*'s holding that a CAT order isn't a final order of removal. *Id.* at 269. Instead, the administrative removal order entered after Riley conceded removability "is the final order of removal in this case." *Id.* at 272. And the Court clarified that "review of removability and withholding of removal should occur in a single appellate proceeding." *Id.* at 271.

The Court recognized some practical problems that might arise "if a removal order becomes final before the issue of withholding-only relief is decided." *Id*. It acknowledged that some aliens might miss the 30-day deadline because CAT orders often are not issued within 30 days of an order of removal. *See id*. at 271–72. And it also recognized that if an alien petitions for review of the order of removal, that appeal may be wrapped up before agency issues a withholding order. *See id*. at 271–72. But despite the practical problems, the Court stated that we must follow "the statutory text and our precedents." *Id.* at 272.

The Court then suggested that there might be ways to avoid those problems. The Court pointed out that, "[i]n a case like this," the government could alert the alien of the need to petition for review within 30 days of the final removal order and could alert the court of appeals of the pendency of a withholding-only proceeding. *Id*.

Justice Thomas joined the Court's opinion in full. But he wrote separately to question whether we have jurisdiction "to review a CAT order when the court is not conducting that review 'as part of the review of a final order of removal.'" *Id*. at 278

33

(Thomas, J., concurring). As he explained, at the time of that decision, Riley had not petitioned to review the final order of removal.

To summarize, *Nasrallah* and *Riley* tell us that a withholding-only order, such as an order about CAT relief, is not a final order of removal under § 1252(a)(1). Those decisions, along with the note to § 1231, make clear that federal courts have no jurisdiction to review CAT orders on their own. To be reviewed, a CAT order must be combined with a petition to review a final order of removal. Said differently, if an alien doesn't petition for review of a final order of review, he cannot later seek review of a CAT order.

C.

With this background, I return to the question of whether we have jurisdiction. Riley didn't petition for review of his order of removal within 30 days of its issuance. In fact, he conceded removability. His petition for review of the CAT order, therefore, is not part of a challenge to the order of removal and concerns nothing about his removal order. Under *Nasrallah* and *Riley*, this is fatal. Supreme Court precedent leaves no room for judicial review of "a CAT order—and only a CAT order—when the petitioner does not seek review of a final order of removal." *Riley*, 606 U.S. at 281 (Thomas, J., concurring).

That'd be the end of the road for Riley had he not tried to fix this jurisdictional problem with an 11th-hour motion to amend. But since he asks us to construe his CAT petition to also challenge his removal order by invoking 28 U.S.C. § 1653, we must consider whether that affects our jurisdiction.

The fact that the petition comes so late is not a problem in this case. As already noted, *Riley* holds that § 1252(b)(1)'s 30-day deadline is not jurisdictional. And the

34

government has agreed not to enforce the deadline. So, Riley does not have a timeliness problem.

But he has a substantive problem. While Riley's motion to amend asks to clarify that his petition to review includes a challenge to his order of removal, the motion doesn't assert any real challenge to the removal order. Not a word. So strangely, in a motion to amend that has nothing to do with the removal order, Riley asks us to construe his petition to review the CAT order—which is not a final order of removal and which does not affect the final order of removal—as a challenge to the final order of removal. Stranger still, it contradicts Riley's concession before the Immigration Judge that the case was only one for deferral of removal under CAT because of Riley's undisputed conviction.

The majority says this, "is precisely the process the Supreme Court laid out in *Riley* to ensure judicial review of CAT claims." Maj. Op. at 11. It says *Riley* authorized "placeholder petitions" and that's basically what Riley's motion to amend is. Maj. Op. at 8. Maybe that is right. After all, before explaining that the government could alert the alien of the need to petition for review within 30 days of the final removal order and could alert the court of appeals of the pendency of a withholding-only proceeding, the Court said, "[i]n a case like this." *Riley*, 606 U.S. at 272.

But with respect, that's not how I read *Riley*. I just don't agree that decision permits an alien to satisfy the jurisdictional requirement of a petition to review a final order of

removal with a fake petition for review of a final order.[4] If the denial of CAT relief cannot

be reviewed if it's not part of a challenge to an order of removal, an alien must actually

---

[4] *Monsalvo Velazquez v. Bondi*, 604 U.S. 712 (2025) doesn't permit this either. There, a noncitizen petitioned for review of an order denying his motion to reconsider the dismissal of his motion to reopen removal proceedings. *Id*. at 718. The order of removal gave him 60 days to leave voluntarily. *Id.* at 720. Monsalvo moved to reopen, but there was a dispute about whether he had done so within 60 days. *Id.* at 721.The government said regardless, he didn't challenge removability. *Id*. To address the timeliness of the voluntary departure deadline filing, the Court had to first decide whether federal courts had jurisdiction to review the order denying his motion to reconsider when Monsalvo failed to seek judicial review after the Board entered its final order of removal. *Id*. The Court concluded there was jurisdiction. *Id*. at 722. It concluded that Monsalvo did not have to "bundle his question about the operation of his voluntary-departure deadline with some challenge to the Board's conclusion that he was removable." *Id.* at 721–22. The voluntary departure question, the Court reasoned, arose from a final order of removal that could be reviewed under § 1252(b)(9). *Id*. at 722. The Court said the timing for the voluntary departure issue was part of the order of removal. *Id*. So, it did not matter if Monsalvo failed to challenge the part of the order that directed that he be removed. *Id*. The Court also rejected the idea that Monsalvo should have petitioned to review his removability when he had no grounds to do so. *Id*. Monsalvo, the Court said, did not have to "adorn [his] judicial petition[] with a pointless challenge to [his] removability." *Id.* This doesn't help Riley. If anything, *Monsalvo* is inconsistent with the idea of petitioning for review of an order of removal when there are not valid grounds to secure jurisdiction.

challenge the order of removal.[5] Without an actual challenge to removability, we have no jurisdiction.[6]

Perhaps there is a gap in the statutory framework as interpreted by the Supreme Court. Perhaps that is what Congress intended. I have no idea. But our job is to follow the statutes Congress enacts and precedent from the Supreme Court wherever they lead, not validate non-challenges to final orders of removal to create a means of judicial review that doesn't otherwise exist. If Congress doesn't like the results the immigration statutes produce, it should amend them. We should not do that ourselves.[7]

---

[5] This also seems consistent with other provisions of the INA. 8 U.S.C. § 1182(a)(6)(C)(i) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." And 8 U.S.C. § 1158(d)(6) provides that "[i]f the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application." In the face of those provisions, it is hard to understand how we could approve of a challenge to an order of removal in name only.

[6] And Riley's proposed vehicle for these efforts is also problematic. 28 U.S.C. § 1653 states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. But the statutory provision contemplates amending "allegations of pleadings," meaning the correction of "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). So, while the statutory provision concerns the amending of pleadings to show jurisdiction, it does not embrace going back in time so that a petitioner can make new choices about what it should have asked the court for years prior.

[7] Our sister circuits that have considered this issue are split. The Ninth Circuit sides with my view. In *Navarrete v. Bondi*, 170 F.4th 1214, 1225 (9th Cir. 2026), the Ninth Circuit held that a "petition advancing a standalone claim for review of a CAT order is not sufficient to invoke [ ] jurisdiction under 8 U.S.C. § 1252(a)(1)." And the Ninth Circuit (Continued)

37

III.

Because I find we lack jurisdiction, I would not reach the merits of Riley's petition. But the majority, having concluded we have jurisdiction, grants Riley's petition for review. I disagree here as well.

Before explaining my disagreement, recall that, "[a]n applicant seeking CAT relief bears the burden to prove that 'it is more likely than not that he will be tortured if removed' and 'that this torture will occur at the hands of government or with the consent or acquiescence of government.'" *Nolasco v. Garland*, 7 F.4th 180, 190 (4th Cir. 2021) (quoting *Martinez v. Holder*, 740 F.3d 902, 913–14 (4th Cir. 2014)). "Speculative or generalized fears of violence do not satisfy this standard." *Paredes v. Bondi*, No. 24-1105,

---

rejected an argument Navarrete adopted that he should be "permitted to amend his petition to add a 'nominal' challenge to his removal order so that his CAT claim [could] be heard," because Navarrete admitted that any such challenge would be "'a red herring' and 'frivolous.'" *Id.* at 1224. The court denied his request to amend his petition as futile because "Navarrete did not contest that he would be unable to assert anything more than a baseless and frivolous claim." *Id.* at 1225. Likewise, the Eleventh Circuit recently agreed with the Ninth Circuit, finding no jurisdiction to consider the petition since it was not "simultaneously reviewing a final removal order." *Hayles v. U.S. Att'y Gen.*, No. 24-10516, 2026 WL 1782580, at *1 (11th Cir. June 22, 2026). The Eleventh Circuit recognized that the "Supreme Court in *Riley* [did not] consider[] our statutory jurisdiction, and we cannot infer anything about jurisdiction based on that silence." *Id.* at *4 (holding that "judicial review of the denial of relief under the CAT is available only if a petition for review challenges a final removal order"). And the court also rejected the petitioner's argument that his pro se petition should be read to challenge his final order of removal in addition to the Board's denial of CAT relief because the court is not in the business of rewriting otherwise deficient pleadings. *Id.* at *5. Finally, it rejected the petitioner's efforts to use his briefing to fix his petition and his request for formal leave to amend. *Id.* In contrast, a divided Third Circuit sides with the majority. *See Laureano v. Att'y Gen. United States of Am.*, --- F.4th ----, 2026 WL 1502683, at *1 (3d Cir. May 29, 2026) (finding jurisdiction to review statutory withholding and CAT claims after *Riley* in a fractured opinion but denying relief).

2025 WL 1249367, at *6 (4th Cir. Apr. 30, 2025) (denying petition for review of a final order of removal reversing an immigration judge's determination on eligibility for CAT relief).

While the Immigration Judge found that Riley met this burden, the Board found two errors in that decision. First, it held that the Immigration Judge's finding that Hamilton would torture Riley if he was returned to Jamaica was based on speculative evidence. Second, it held that the judge's finding that the government would acquiesce was based on legally insufficient general evidence, not evidence showing a particularized risk to Riley. In granting Riley's petition, the majority concludes that the Board misapplied the required standard of review in reaching these decisions by not properly deferring to the Immigration Judge. And had the Board properly applied the standard of review, the majority apparently believes it might have affirmed the Immigration Judge's decision. The majority also seems to believe that the Board failed to sufficiently explain why it rejected credible evidence. I disagree.

First, the majority criticizes the Board's holding that Riley did not show a "particularized risk of torture" since his claim was "based on speculative assertions by [Riley] regarding Hamilton." J.A. 4. The Board explained that Riley had no first-hand knowledge that Hamilton killed his cousins. And while Riley did submit affidavits of relatives who described that violence, the Board pointed out that none mentioned Hamilton. Instead, they described threats in phone calls and inquiries about Riley's location from unnamed individuals. In addition, the Board pointed out that Hamilton was not even in

39

Jamaica at the time of the murders. Therefore, the Board concluded that Riley's claims about Hamilton's role in the murders and threats were speculative.

I see no problem with this conclusion. The Board certainly gave specific, record-based reasons for concluding that Riley's evidence was speculative. Since Riley had no firsthand knowledge about anything Hamilton did and the written documentation from his relatives didn't mention Hamilton, the Board found there was no evidence to support the Immigration Judge's finding that Hamilton was the "source of various threats." J.A. 141. The majority insists that testimony that "Dons" like Hamilton take control of neighborhoods using tactics like those his relatives described is enough. Maj. Op. at 21–22. But even crediting that testimony does not provide evidence that Hamilton was the one who actually carried out the threats. The Board's decision to that effect doesn't reweigh the evidence—it finds that the evidence Riley submitted, even if credible, was legally insufficient. *Garland v. Ming Dai*, 593 U.S. 357, 373 (2021) ("even credible testimony may be…insufficient to satisfy the burden of proof"). It seems to me like the Board got it exactly right. [8]

Second, the majority rejects the Board's holding that Riley did not show a particularized risk of torture at the acquiescence of the Jamaican government if removed

---

[8] The majority points out that Riley says Hamilton ordered, not committed, the killings making Hamilton's incarceration irrelevant. But even if being in jail doesn't mean he couldn't have ordered the killings, it undermines the inferential chain Riley asks to be drawn and provides the substantial evidence we look for as we consider the Board's review of the IJ's factual findings. *Colorado v. Bondi*, 148 F.4th 182, 190 (4th Cir. 2025) (noting that we first check de novo to ensure the Board "applied" the proper standard of review, then, in determining whether it properly applied it, ask whether its determinations are supported by substantial evidence).

to that country. But the Board explained that the only evidence Riley submitted that the government would acquiesce to any torture Hamilton carried out was "generalized statements in the 2020 State Department Report" on government human rights abuses, allegations of torture in police custody and insufficient action to address such abuse. J.A. 5. It noted that such country conditions evidence "does not mention Hamilton and does not indicate the police will acquiesce in torture." J.A. 5. And it pointed out that "[t]he mere existence of a pattern of human rights violations in a particular country does not constitute a sufficient ground for a finding that a person would [be] more likely than not tortured." J.A. 5 (citing *Nolasco*, 7 F.4th at 191).

I see nothing wrong with this decision either. General information about conditions in a country is not enough. *Colorado*, 148 F.4th at 193 (holding an immigration judge's decision cannot be "based on generalized (and factually insufficient) statistics, and on [the petitioner's] speculation."). In assessing that evidence, the Board did not improperly review the Immigration Judge's decision. Rather than reweighing the evidence, it finds that the evidence Riley submitted, even if credible, was legally insufficient. That's entirely proper. "While largely deferring to [an immigration judge's] factual determinations, [] the [Board] can exercise its independent judgment to evaluate not only the legal significance of the facts but also the ultimate conclusions to which those facts lead." *Turkson v. Holder*, 667 F.3d 523, 527 (4th Cir. 2012); *see also Huaman-Cornelio v. Bd. of Immigr. Appeals*, 979 F.2d 995, 998 (4th Cir. 1992) (in reviewing for clear error, "[t]he BIA clearly has the power to review an IJ's findings de novo, to make its own findings even as to matters of

41

credibility, and to assess the legal sufficiency of the evidence"); *Funez-Ortiz v. McHenry*, 127 F.4th 498, 505 (4th Cir. 2025).

The majority insists the Immigration Judge did not rely on the country conditions evidence to establish acquiescence. Instead, it relied on it to bolster Riley's evidence that Dons like Hamilton carry out violence and threats to control neighborhoods. But without having any connection to Hamilton, generalized country conditions do not provide sufficient evidence to show Riley faced the required risk. In sum, Riley simply failed to introduce sufficient evidence showing that Hamilton would torture him if he was removed to Jamaica.

In fact, it seems to me that the majority, not the Board, fails to adhere to the proper standard of review. "[W]e do not reweigh the evidence on a petition for review." *Nolasco*, 7 F.4th at 191; *see also Paredes*, 2025 WL 1249367, at *10 ("We emphasize that our role as a reviewing court is not to reweigh the evidence or to substitute our own views for those of the agency; it is, instead, to ensure that the BIA acted within the bounds of the law, applied the correct legal standards, and reached a decision supported by substantial evidence."). We "must uphold the BIA's decision so long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mulyani v. Holder*, 771 F.3d 190, 199 (4th Cir. 2014) (quoting *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011)). Our only question is whether the "evidence '*compels*' us to disagree with the Board." *Colorado*, 148 F.4th at 190 (quoting *Herrera-Alcala v. Garland*, 39 F.4th 233, 244 (4th Cir. 2022)) (emphasis in original). Following that standard, I would deny Riley's petition for review.

IV.

As explained above, we have no jurisdiction to review Riley's petition. As a result, we should dismiss it. Also, the Board properly applied the standard of review in holding that Riley did not produce legally sufficient evidence to satisfy his burden to obtain CAT relief. With respect, I dissent.